UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                      Plaintiff,

                                                                          DECISION AND ORDER

                                                                          07-CR-6125L

                    v.

MARVIN TRAYLOR,

                                      Defendant.
_____

      This Court referred all pretrial matters in this criminal case to United States Magistrate Judge Marian W. Payson pursuant to 28 U.S.C. § 636(b).  Defendant, Marvin Traylor, was arrested by members of the Rochester Police Department on June 19, 2007.  The officers searched him and found keys to the premises in which he was found, as well as $310 in cash.  Defendant moved to suppress those items.  The Government defended the motion on the grounds that the items were seized incident to a lawful arrest.  Defendant, on the other hand, claims that there was no probable cause to arrest him.

      Magistrate Judge Payson held a suppression hearing at which one of the arresting officers, Daniel Zimmerman, testified.  Defendant did not testify.  Magistrate Judge Payson issued a detailed Report and Recommendation (Dkt. #32) recommending that defendant's motion to

suppress be denied.  Defendant duly filed objections to that Report and Recommendation (Dkt. #35).

I have reviewed the Report and Recommendation, the objections and the transcript of the suppression hearing (Dkt. #24).  I accept and adopt the Report and Recommendation of Magistrate Judge Payson.  I agree with her analysis and assessment and conclude that the police did have probable cause to arrest Traylor on the day in question and that the seizure of the items found on his person was proper.  Defendant's motion to suppress is therefore denied.

The facts surrounding defendant's arrest are largely undisputed.  In fact, as Magistrate Judge Payson noted in her Report and Recommendation, the parties entered into a stipulation in which they agreed to most of the operative facts.  *See* Dkt. #27.

That stipulation, and Magistrate Judge Payson's Report and Recommendation, familiarity with both of which is assumed, set forth the relevant facts known to the police at the time of the events in question.  In short, on June 19, 2007, the officers executed a search warrant issued by a state court judge, at 100 Chili Avenue, Apartment 1, in Rochester, New York.  The search warrant had been obtained because drugs had been sold to informants at that address on two occasions within a few weeks of the June 19 date.

Inside the house (which the officers entered with the use of a battering ram), the officers found Traylor and his female companion, Jessica Hernandez.  No one else was present.

The apartment was, to say the least, sparsely furnished.  There were no dressers, no clothes to be found, and little or no furniture or other amenities typically associated with a dwelling place.

On a shelf in the bathroom of the apartment, the officers found twenty-five baggies containing crack cocaine, a number of empty baggies, and a scale. These were found in a closed "Clorox Wipes" container. No other drugs or drug paraphernalia were found in the apartment.

The police had not seen Traylor previously at the apartment, and he did not match the description of the very large man (estimated at 260 to 300 pounds) whom the informants had identified as the person who had distributed drugs to them at the apartment. Additionally, the officers had learned from Traylor's companion, Ms. Hernandez (who was not arrested), that Traylor had brought her to the apartment that day to "celebrate" her birthday.[1]

Defendant contends that the evidence shows no more than that Traylor was present at a scene where drugs were found during the execution of the search warrant. Traylor did not testify at the suppression hearing and there is no evidence that he said anything to the officers on the scene to explain why he was there. It was only Ms. Hernandez who explained, to some extent, the couple's presence there.

The issue before me, then, is whether the officers on the scene had probable cause to arrest Traylor. Determining whether probable cause exists requires an examination of the "totality of the circumstances." *See Illinois v. Gates,* 462 U.S. 213, 230-31 (1983). As stated by Magistrate Judge Payson, "probable cause requires no more and no less than a 'reasonable ground for belief of guilt.'" Report and Recommendation at 8 (quoting *Maryland v. Pringle*, 540 U.S. 366, at 371 (2003) (additional internal quotes omitted).

---

[1] A birthday card was found at the scene.

Of course, stating the applicable rules does not resolve the question. Each case is unique and must be judged on its own facts. Based on the facts before me, I agree with Magistrate Judge Payson's conclusion that the officers had an objectively reasonable basis to arrest Traylor.[2]

Based on the facts before me, I find that the officers were justified in concluding, first, that the premises were being used as a drug house, *i.e.*, a location from which illegal drugs were dispensed. For one thing, the officers knew that drug sales had occurred there within the past few weeks, which was the basis for the search warrant.

The interior of the apartment also supported that conclusion. The drugs and drug paraphernalia were the most telling objects in that regard, of course, but the stark interior supported such an inference as well. Considering both what *was* found in the apartment (such as a television, DVDs, video games, a few dirty dishes, etc.) and what was *not* found there (particularly clothing, dressers or chests, more than minimal bedding or linens, or other indicia of long-term occupation), the overall impression was of a house that was occasionally used by someone, but not as a day-to-day residence. In short, the appearance of the interior was entirely consistent with what one might expect to find in a drug house. *See United States v. Astorga*, No. A05-066-CR, 2005 WL 3115854, at *15 (D.Alaska Nov. 17, 2005) (noting that "the appearance of the place [that was searched] with minimal furniture [was] consistent with a drug house").

---

[2]The officers also listed the fact that Traylor had a key to the apartment in his pocket together with $310 as some basis to justify the arrest. Of course, officers cannot justify an arrest and a search by what is discovered after the fact. *See United States v. Spinner*, 475 F.3d 356, 359 n. * (D.C.Cir. 2007) ("a search not justified when it is begun cannot be used to elicit evidence with which to justify the search after the fact"); *accord United State v. Pitts*, 322 F.3d 449, 458-59 (7th Cir. 2003). That the officers listed those items is thus not controlling. Leaving the fruits of the search aside, however, I believe that there was an objectively reasonable basis for the officers to arrest Traylor for possession of the drugs.

Defendant correctly notes that mere presence at a location where drugs are found, standing alone, will not support a conviction for possession of the drugs. *United States v. Jones*, 531 F.3d 163, 169 (2d Cir. 2008) (citing *United States v. Rios*, 856 F.2d 493, 496 (2d Cir. 1988)). Of course, the issue before me now is not whether the evidence is sufficient to convict but whether there was probable cause to arrest.

There was more than mere presence here, however. Traylor and Hernandez were the only people inside the apartment, and according to Hernandez, Traylor had brought her there. That implied that Traylor had access to the apartment and that he knew that he would be able to enter the apartment, whether anyone else was there when they arrived or not.

"Access to a private apartment ... is presumably limited, and thus a person's admission to the apartment normally would raise a stronger inference of connection to the activities conducted therein." *United States v. Holder*, 990 F.2d 1327, 1329 (D.C.Cir. 1993). If anything, access to a private apartment being used as a drug house would likely be even *more* limited; although buyers need to go there to make their purchases, the drug dealer or dealers using the apartment would presumably take pains to ensure that only persons whom they trust could actually enter the apartment, particularly with no one else present. Traylor's presence in the apartment with only his girlfriend therefore strongly suggested that he was a participant in the drug activity that was occurring there.

Through his counsel, Traylor suggests that there may have been another, non-drug related reason why he and his female companion were present in the apartment: some sort of birthday tryst. That may indeed be one explanation, and there may be others, but the police were not

required to sort all those out or to think of every possible, lawful reason why Traylor *might* have been inside the apartment. The test is not whether the officers had proof of Traylor's guilt beyond a reasonable doubt, but whether, under the totality of the circumstances, there was probable cause to believe that criminal activity was afoot and whether Traylor was engaged in that activity. *See United States v. Sepulveda*, 102 F.3d 1313, 1316 (1st Cir. 1996) ("To be sure, Sepulveda might have been an innocent visitor. But probable cause requires only that the police have reasonable grounds to believe that Sepulveda had committed the crime") (internal quotation marks omitted). I believe that such probable cause existed on June 19, 2007 when the officers executed the warrant.

## CONCLUSION

I accept and adopt the Report and Recommendation (Dkt. #32) of United States Magistrate Judge Marian W. Payson. Therefore, defendant's motion to suppress physical evidence (keys and currency) found when he was searched on June 19, 2007, is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       January 12, 2009.